**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**SCOTT JAWORSKI,**


                    **Plaintiff,**                    **3:14-cv-510**
                                                      **(GLS)**

          **v.**

**CAROLYN W. COLVIN,**
Commissioner of Social Security,


                    **Defendant.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm            PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN           SANDRA M. GROSSFELD
United States Attorney              Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Scott Jaworski challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Jaworski's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On May 4, 2009, Jaworski filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since September 2, 2001.  (Tr.[1] at 67-68, 128-30.)  After his applications were denied, (*id.* at 76-81), Jaworski requested a hearing before an Administrative Law Judge (ALJ), which was held on April 19, 2011, (*id.* at 33-66, 82-83).  On July 19, 2011, the ALJ issued an unfavorable decision denying the requested benefits.  (*Id.* at 9-24.)  After the Appeals Council's subsequent denial of review, Jaworski commenced an action in Federal District Court and, on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (Dkt. No. 8.)

consent of the parties, the matter was remanded for further administrative proceedings. (*Id.* at 1-6, 558-60.) Thereafter, the Appeals Council remanded the case back to the ALJ who, on February 14, 2014, again denied Jaworski's claim following an additional hearing held on December 31, 2013. (*Id.* at 439-59, 495-525, 561-65.)[2] This became the Commissioner's final determination upon the Appeals Council's denial of review. (*Id.* at 291-94.)

Jaworski commenced the present action by filing his complaint on May 2, 2014 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

### III. **Contentions**

Jaworski contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 12 at 9-25.) Specifically, Jaworski claims that the ALJ: (1) rendered a residual functional capacity (RFC) determination that is unsupported by substantial

---

[2] The Appeals Council also instructed the ALJ to consolidate Jaworski's May 2009 claims with his subsequent application for SSI benefits, filed while his appeal of the ALJ's unfavorable decision was pending. (Tr. at 564, 679-84.)

evidence; (2) failed to make a proper credibility determination; and (3) improperly determined that he was capable of performing work which exists in significant numbers in the national economy. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 13 at 7-18.)

## IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (Dkt. No. 12 at 1-9; Dkt. No. 13 at 1.)

## V. <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

# VI.  Discussion

## A.    RFC Determination

First, Jaworski contends that the ALJ's errors in weighing various medical opinions of record, as well as his failure to adopt any one such opinion, renders his RFC determination unsupported by substantial evidence.  (Dkt. No. 12 at 9-18.)  Further, Jaworski argues that the ALJ failed to consider the combined effect of obesity with his other impairments in making the RFC determination.  (*Id.* at 18-19.)  The Commissioner counters, and the court agrees, that the ALJ appropriately weighed the medical opinion evidence before him, and his RFC determination is supported by substantial evidence.  (Dkt. No. 13 at 12-16.)

A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence[4] in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is

---

[4] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that, despite chronic obstructive pulmonary disease (COPD) and mild lumbar spine degenerative disc disease, Jaworski retains the RFC to perform light work[5] as long as he avoids concentrated exposure to respiratory irritants, such as smoke, dust, and fumes.  (Tr. at 445-46.)  In making this determination, the ALJ gave little evidentiary weight to the opinions of treating physician Darlene Denzien[6] and consultative examiner Justine Magurno.[7]  (*Id.* at 451-52.)  According to Jaworski, this was in error, as the ALJ failed to consider the relevant regulatory factors for weighing opinion evidence, and, ultimately, Dr.

_____

[5] Light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds.  *See* 20 C.F.R. § 416.967(b).  Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (1983).

[6] In October 2013, Dr. Denzien opined that, due to COPD and chronic low back pain, Jaworski was able to sit for only four hours, and stand and walk for one hour of a workday, could never lift or carry more than five pounds, needed more than one ten minute rest period every hour, and would miss more than four days of work per month.  (Tr. at 810-12.)  Dr. Denzien also opined that Jaworski should not be exposed to any dust or fumes.  (*Id.* at 811.)  This opinion was largely consistent with Dr. Denzien's previous functional assessment of Jaworski, completed in June 2011.  (*Id.* at 436-38.)  Dr. Denzien later concluded that Jaworski would be off task for more than thirty-three percent of the workday due to his impairments.  (*Id.* at 813.)

[7] According to Dr. Magurno, Jaworski has marked limitations for bending, twisting, lifting, carrying, reaching, pulling, sitting, and standing, and should avoid known respiratory irritants due to his asthma.  (Tr. at 248-54.)  Further, Dr. Magurno opined that Jaworski is moderately limited in his ability to walk.  (*Id.* at 253.)

Denzien's opinions were deserving of controlling weight. (Dkt. No. 12 at 10-16.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony

presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id.* (citation omitted).

In this case, as noted by the ALJ, Dr. Denzien began treating Jaworski in June 2001 for complaints of back pain. (Tr. at 247.) One week later, Jaworski reported that his pain had improved significantly, but he still felt unable to work. (*Id.* at 246.) By the end of June, Dr. Denzien recommended that Jaworski return to work part time for two weeks, at which time she would reevaluate his back. (*Id.* at 243.) In July 2001, Dr. Denzien recommended that Jaworski attend physical therapy, but he lacked health insurance to pay for it. (*Id.* at 241.) Dr. Denzien recommended Jaworski seek reduced medical fees so that he could use the savings to pay for physical therapy. (*Id.* at 241.) Thereafter, Jaworski visited Dr. Denzien sporadically, largely when needing paperwork completed for various governmental programs. (*Id.* at 222, 224, 226, 237, 780-81.)

For instance, in February 2002 Jaworski requested that Dr. Denzien write a note in order for him to receive benefits under a heating assistance program. (*Id.* at 237.) Dr. Denzien agreed that Jaworski was unable to

perform "his previous type of employment" and could not do "a lot of lifting." (*Id.*)  Thereafter, in May of 2003, Jaworski contacted Dr. Denzien's office seeking a note for the Department of Social Services (DSS) as well as other benefit programs, although he did not want to be seen in the office. (*Id.* at 234.)  In September 2004, Jaworski was seen for pain in his thoracic spine which began after "moving furniture around."  (*Id.* at 233-34.)  He was in no acute distress, sensation was intact, deep tendon reflexes were normal, and straight leg raising was negative, but he experienced tenderness to palpation and flexion was limited to forty-five degrees.  (*Id.* at 233.)  In August 2006, Jaworski was seen by a physician's assistant in Dr. Denzien's office.  (*Id.* at 231.)  Jaworski was again seeking paperwork to be completed on his behalf, and explained that he could not stand for more than fifteen minutes "without falling to his knees in agony."  (*Id.*)

Subsequently, in April 2007, Jaworski requested that Dr. Denzien mark him unable to work on a Social Services' form.  (*Id.* at 229.)  On examination, Jaworski refused to flex more than fifteen degrees and jumped when Dr. Denzien superficially touched his skin.  (*Id.*) Nevertheless, deep tendon reflexes, strength, sensation, and straight leg raising were all within normal limits on examination, and Jaworski was able

to put on his socks and shoes without assistance.  (*Id.*)  Dr. Denzien

completed the Social Services' form, finding Jaworski disabled for three

months, and again referred Jaworski to physical therapy.  (*Id.*)  However,

Dr. Denzien also cautioned Jaworski that if physical therapy was not

attended during that time, Dr. Denzien would thereafter indicate that

Jaworski was able to return to work.  (*Id.*)  At his office visit four months

later, Jaworski admitted that he failed to attend physical therapy, and Dr.

Denzien provided him a note saying that he could return to work.[8]  (*Id.* at

226.)  Jaworski was not seen again until June 2008, when he sought a

note to relieve him from jury duty,[9] and next in May 2009, when he needed

disability paperwork completed.  (*Id.* at 222, 224.)

In January 2010, Dr. Denzien pointed out that, according to a

pulmonary function test, Jaworski's COPD was severe.  (*Id.* at 362.)

However, she also noted that Jaworski only used Albuterol to treat his

COPD occasionally, and did not use his other prescriptions after they failed

---

[8] Jaworski explained to Dr. Denzien that he failed to call to set up a physical therapy appointment until after her referral to physical therapy had expired, and he never sought a new referral because "it never crossed his mind."  (Tr. at 226.)

[9] Notably, although physical examination at this time showed rhonchi occasionally, tenderness in the lumbar spine, decreased range of motion of the lumbar spine, and difficulty getting on and off of the exam table, Jaworski was still smoking daily and not using his inhalers, and reported that his back pain was controlled by his pain medication.  (Tr. at 224.)

to provide immediate relief.  (*Id.* at 362.)  Subsequent treatment notes indicate that Dr. Denzien's office would not complete disability paperwork for Jaworski because he had not been examined in a year.  (*Id.* at 780.)  In May 2012, Dr. Denzien reviewed Jaworski's previous diagnostic tests, and noted that a 2006 MRI revealed mild degenerative disk disease, and recent x-rays showed no change since 2007 with some mild osteoarthritis and degenerative disk disease.  (*Id.* at 774.)  With respect to Jaworski's COPD, Dr. Denzien commented that recent pulmonary function tests showed "better control."  (*Id.*)  At that time, Jaworski's physical examination was benign, other than some tenderness of the lumbar paraspinal muscle.  (*Id.*) Dr. Denzien's most recent treatment note of record, from August 2013, indicates that Jaworski was having no problems with his breathing, and his back pain was "well controlled as usual."  (*Id.* at 805.)

The ALJ's detailed discussion of Dr. Denzien's treatment notes highlights the lack of clinical findings with respect to Jaworski's low back impairment and the inconsistency between the level and frequency of his treatment with the level of his complaints.  (*Id.* at 448-51.)  Notably, at the December 2013 administrative hearing, Jaworski explained that he had never attended physical therapy because every time he called a cab, "the

cab just never showed up."[10]  (*Id.* at 506.)  In addition, Jaworski testified

that he had never received injections or seen a specialist with respect to

his lower back impairment, and took only Ibuprofen and Tramadol, which

mostly relieved his back pain.[11]  (*Id.* at 506-07.)  Jaworski also testified that

he had been walking to places more often, including the grocery store

located a few blocks from his home, and was able to carry groceries home

in a backpack.  (*Id.* at 510-11.)  The ALJ noted that Jaworski's chest x-rays

have been normal, he failed to use his COPD medications, he smokes

daily, and, at the time of the hearing, he had failed to refill several of his

prescriptions for COPD in over a year and a half.  (*Id.* at 224, 362, 408,

410, 427-28, 434, 450, 509, 792.)  Thus, the ALJ concluded that the

severe functional limitations articulated by Dr. Denzien were not

well-supported by medically acceptable clinical and laboratory diagnostic

techniques and inconsistent with other substantial evidence of record, and,

---

[10] Jaworski contends that it was error for the ALJ to fault him for his inability to pay for physical therapy.  (Dkt. No. 12 at 13 n.11.)  However, Jaworski's testimony and treatment notes indicate that it was a lack of desire to attend, and not an inability to pay, that prevented him from ever attending physical therapy.  (Tr. at 226, 229, 506.)

[11] Indeed, in June 2008, Jaworski reported that Tramadol maintains reasonable control of his back pain, and in August 2013 he reported that his back pain was "well controlled as ususal."  (Tr. at 224, 805.)

therefore, not deserving of controlling weight.  (*Id.* at 451.)[12]

In addition to the lack of clinical findings and Jaworski's sporadic treatment history, the opinion of consultative examiner Gilbert Jenouri is inconsistent with Dr. Denzien's restrictive opinion.  After examining Jaworski in December 2012, Dr. Jenouri opined that Jaworski suffered only mild restrictions in his ability to lift, carry, walk, stand, bend, and climb stairs, but should avoid known respiratory irritants.  (*Id.* at 793-96.)  While it would have been prudent for the ALJ to thoroughly discuss Dr. Jenouri's opinion, because it is clear from his direct citation to the opinion that the ALJ reviewed it, (*id.* at 445), and, more importantly, because the opinion is consistent with the ALJ's RFC determination,[13] the court is not persuaded that the ALJ's failure to do so constitutes reversible error.  *See Walzer v.*

---

[12] Jaworski argues that remand is required because the ALJ noted that Dr. Denzien's opinions failed to provide a specific diagnosis for Jaworski's back condition, and, instead, "describe[d] it as 'chronic back pain.'"  (Tr. at 451; Dkt. No. 12 at 10-11.)  As the ALJ considered all of the diagnoses of record, concluded that Jaworski suffered from mild lumbar spine degenerative disc disease, and evaluated Dr. Denzien's opinions on the basis of their evidentiary support and consistency with the record, the court sees no reason to remand on this basis.  (Tr. at 445-51.)  Indeed, the ALJ was correct in noting that symptoms are not in and of themselves distinct impairments, as the former are used to establish the latter.  *See* 20 C.F.R. § 404.1508.

[13] Jaworski argues that Dr. Jenouri's opinion is inconsistent with the RFC determination because it precludes Jaworski from exposure to respiratory irritants, while the RFC determination precluded him from "concentrated exposure" to respiratory irritants.  (*Compare* Tr. at 446, *with id.* at 796; Dkt. No. 12 at 18.)  However, as this opinion is consistent with the opinions of Drs. Denzien and Magurno, which the ALJ discounted for the reasons discussed elsewhere, remand is unnecessary on this basis as well.

*Chater*, No. 93 Civ. 6240, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (explaining that, where discussion of an omitted medical report "would not have changed the outcome of the ALJ's decision," such omission constitutes "harmless error").

With respect to consultative examiner Magurno, the ALJ explained that Jaworski would not cooperate with the examination by refusing to change out of his clothes and refusing to allow Dr. Magurno to test his reflexes. (Tr. at 251-52, 449.) Further, Dr. Magurno's opinion was not supported by diagnostic images, because the June 2009 x-ray Dr. Magurno reviewed revealed only a transitional L5 vertebral body, and was otherwise unremarkable. (*Id.* at 255.) The height of the vertebral bodies and intervertebral disc spaces were well maintained, and the pedicles were intact throughout. (*Id.*) Further, Dr. Magurno reviewed past x-ray results indicating a normal lumbosacral spine. (*Id.* at 252.) Because the ALJ found Jaworski's subjective complaints not entirely credible, *see infra* Part VI.B, and the results of Dr. Magurno's examination were unreliable due to Jaworski's refusal to cooperate with the examination, the ALJ discounted Dr. Magurno's functional assessment. (Tr. at 452); *see Roy v. Massanari*, No. Civ. 3:01 CV306, 2002 WL 32502101, at *3 (D. Conn. June 12, 2002)

(explaining that, there is no "basis in law by which an ALJ must accept a medical opinion in its entirety even when premised on arguably false representations").

Finally, Jaworski argues that the ALJ failed to consider the combined effects of his obesity with his other impairments. (Dkt. No. 12 at 18-19.) This argument, which is devoid of any citation to the administrative record, overlooks the fact that "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz v. Barnhart*, No. 04 CIV 9011, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006). Here, Jaworski points to no medical evidence that he is limited by his obesity, and a review of the record, including the administrative hearing, reveals no subjective complaints of such limitations. (Dkt. No. 12 at 18-19.) As such, the court determines that the ALJ did not err in failing to explicitly address Jaworski's obesity in his RFC determination.

In sum, contrary to Jaworski's arguments, the ALJ provided good reasons for choosing to discount the opinions of Drs. Denzien and Magurno. (Tr. at 446-52.) In reaching that conclusion, the ALJ explicitly referenced 20 C.F.R. § 404.1527, as well as relevant Social Security Rulings. (*Id*. at 447.) Further, it is evident from the ALJ's direct citation to

Dr. Denzien's treatment notes spanning a twelve-year-period, (*id.* at 448-51), that the nature and duration of Dr. Denzien's treatment relationship with Jaworski were properly considered.  As it is clear that he properly applied § 404.1527(c), the ALJ did not err in failing to methodically discuss each individual factor, and his assessment of the opinions of Drs. Denzien and Magurno is legally sound.  *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").  Moreover, in applying the appropriate legal standards to evaluate these medical opinions, the ALJ arrived at an RFC determination that is supported by substantial evidence.  *See Pellam v. Astrue*, 508 F. App'x 87, 89-91(2d Cir. 2013) (holding that, where a claimant's treatment records revealed only that she suffered limited or no pain and was somewhat limited in her range of motion, the ALJ's RFC determination, which accounted for these factors, was supported by substantial evidence, despite the fact that the ALJ claimed to have rejected the only functional assessment of record).

**B.    Credibility Determination**

Next, Jaworski argues that the ALJ failed to properly assess his credibility.  (Dkt. No. 12 at 21-25.)  According to Jaworski, the ALJ's

credibility finding is unsupported by substantial evidence because the ALJ failed to consider all of his testimony with respect to his limitations, and improperly discounted his allegations based on his conservative treatment history, daily activities, and poor work history. (*Id.*) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6)

other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Jaworski's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." (Tr. at 447.) In making this determination, the ALJ considered the objective medical findings, opinion evidence, Jaworski's course of treatment, and his daily activities. (*Id.* at 451.) In particular, the ALJ noted that Jaworski has never been referred to a specialist, failed to attend physical therapy, and consistently had no neurological deficits on examination. (*Id.*) Further, the ALJ considered Jaworski's sporadic treatment history, mostly aimed at attaining public assistance benefits, and his failure to use prescribed medication to treat his COPD. (*Id.*) The ALJ also noted Jaworski's own admissions that his medications control his back pain, the fact that diagnostic images of his back revealed no more than minimal findings, and his ability to perform the activities of daily living independently. (*Id.*)

Jaworski contends that the ALJ's credibility determination failed to specify which of his statements were exaggerated or inconsistent with the

signs and findings in the record, thereby preventing meaningful judicial review.  (Dkt. No. 12 at 23.)  However, the ALJ explicitly stated that Jaworski's contention that he cannot sit or stand for more than half of one-hour due to asthma and his back impairment, was inconsistent with the above mentioned evidence.  (Tr. at 447.)  The ALJ further explained that Jaworski's testimony regarding the reasons why he did not attend physical therapy was inconsistent with Dr. Denzien's contemporaneous treatment notes.  (*Id.* at 448.)  Next, the ALJ explained that Jaworski's testimony and allegations to treating providers with respect to his breathing problems were inconsistent with his use of prescribed medications.  (*Id.* at 450.)  Thus, the court is satisfied that the ALJ's credibility determination is sufficiently specific.  *See* SSR 96-7p, 61 Fed. Reg. at 34,485.

Jaworski also asserts that the ALJ improperly discounted his subjective complaints due to the fact that he followed a prescribed course of conservative treatment.  (Dkt. No. 12 at 23.)  On the contrary, the fact that he was never referred to a specialist, and received only Ibuprofen and Tramadol as treatment for his back pain is probative of Jaworski's credibility.  *See* SSR 96-7p, 61 Fed. Reg. at 34,487 (explaining that "[p]ersistent attempts by the individual to obtain relief of pain or other

symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works[, or] referrals to specialists . . . generally lend support to an individual's allegations").  With respect to the side effects of his medications, Jaworski has not pointed to any evidence of record that the medications he takes for his back pain, Ibuprofen and Tramadol, cause any side effects.  (Dkt. No. 12 at 23-24.)  Moreover, the fact that he discontinued taking prescribed medication for his COPD because he saw no "immediate benefit" does not bolster his credibility.  *See* SSR 96-7p, 61 Fed. Reg. at 34,487.

With respect to his daily activities, the ALJ accurately cited the evidence of record when he noted that Jaworski is able to cook, clean, do laundry, and shop.  (Tr. at 249, 447.)  Although Jaworski testified that he was restricted in his ability to perform these activities, information about a claimant's daily activities recorded by medical sources and reported in the medical evidence "can be extremely valuable in the adjudicator's evaluation of an individual's statements about pain or other symptoms."  SSR 96-7p, 61 Fed. Reg. at 34,486.  Lastly, with respect to his work history, the ALJ's finding that Jaworski did not stop working part time at the DSS because of his impairments, but rather because he overslept and was

asked not to return, is supported by the record.  (Tr. at 447, 507-08.)

Further, a poor work history is one of many factors that the ALJ may

consider in weighing the credibility of claimant testimony.  *See Schaal v.

Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

Ultimately, there is no reason to disturb the ALJ's credibility

assessment, as the ALJ's reasons are grounded in the evidence and

articulated in his decision.  *See* SSR 96-7p, 61 Fed. Reg. at 34,485-86.

## C.  Step Five Determination

Finally, Jaworski claims that the ALJ erred in determining that jobs

exist in significant numbers in the national economy that he is capable of

performing.  (Dkt. No. 12 at 19-21.)  Specifically, he alleges that the ALJ's

errors in assessing his RFC and credibility, along with a failure to include in

the hypothetical posed to the vocational expert (VE) the limitations

articulated by Dr. Denzien, fatally undermine the step-five determination.

(*Id*.)  As discussed above, however, the ALJ's RFC and credibility findings

were legally sound and are supported by substantial evidence.  Although

the hypothetical question did not include a recitation of Dr. Denzien's

limitations, it appropriately encompassed the restrictions contained in the

ALJ's RFC analysis.  (*Compare* Tr. at 446, *with id.* at 521-22.)  As such,

the ALJ's step-five determination was free of legal error and is supported by substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE.) Although Jaworski argues that his need to avoid respiratory irritants would preclude him from performing work as a housekeeper, one of the three jobs the VE identified, because the finding of one job is sufficient to demonstrate that there is other work that Jaworski could perform, this argument is meritless. *See* 20 C.F.R. § 404.1566(b); *Martin v. Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008).

## D.     Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Jaworski's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2015
Albany, New York

Gary L. Sharpe
U.S. District Judge